CUTTER (NELSON v.). See Case No. 10,104.

CUTTER (REED v.). See Case No. 11,645.

CUTTER (UNITED STATES v.). See Case No. 14,911.

CUTTER (WHITTEMORE v.). See Cases Nos. 17,600 and 17,601.

CUTTING (CARTER v.). See Case No. 2,476.

---

## Case No. 3,519.

CUTTING et al. v. GILBERT et al.

[5 Blatchf. 259;[1] 2 Int. Rev. Rec. 94.]

Circuit Court, S. D. New York. Sept. Term, 1865.

INTERNAL REVENUE—RESTRAINING COLLECTION—PARTIES—JURISDICTION—REMEDY AT LAW.

1. A bill of peace, founded on the idea that all persons charged with a tax under the 99th section of the internal revenue act of June 30, 1864 (13 Stat. 273), have such a unity of interest in contesting the tax, that they may join as plaintiffs in a bill to restrain the assessment and collection of such tax, and that a determinate number of such persons may appear in the

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

name of themselves and for the rest, will not lie.

[Approved in Georgia v. Atkins, Case No. 5,350.]

2. To authorize such a joinder of plaintiffs, their interest must be not only one in the question, but one in common in the subject matter of the suit.

3. By virtue of the 2d section of the act of March 2, 1833 (4 Stat. 632), and the 50th section of the act of June 30, 1864 (13 Stat. 241), the proper court of the United States has power to prevent, by injunction, the imposition of an illegal tax under the latter act.

[Approved in Georgia v. Atkins, Case No. 5,-350.]

4. Where the remedy at law is adequate, an injunction is always refused. It will be granted to prevent a multiplicity of suits and vexatious litigation, where the right has been established at law; and, where the right is plain, and the remedy at law is not adequate, it will oftentimes be granted without even a trial at law.

[Cited in Schulenberg-Boeckeler Lumber Co. v. Town of Hayward, 20 Fed. 425.]

5. A tax payer, under the internal revenue laws, has a remedy, by an action at law, against an assessor, who makes an assessment on property or business not liable to the tax, where the property or business is disturbed by pretence of the authority.

[Approved in Georgia v. Atkins, Case No. 5,-350. Cited in U. S. v. Schlesinger, 14 Fed. 684.]

6. Where a great number of persons are affected by a tax, and the remedy by separate suits in equity will involve onerous and vexatious litigation, the court will not interfere by injunction in any suit.

This was a bill in equity, filed by some six firms of the city of New York [Robert L. Cutting and others], licensed and doing business as bankers and brokers, under the internal revenue act of June 30, 1864 (13 Stat. 223), as amended by the act of March 3, 1865 (13 Stat. 469), against Sylvester P. Gilbert, assessor, and Sheridan Shook, collector, of the thirty-second collection district in said city, as well for themselves as all others in the same interest, and who should come in and be made parties thereto, and contribute to the expenses of the proceedings. The bill, after setting forth the facts which raised the question whether or not brokers, and bankers doing business as brokers, who had bought and sold stocks, bonds and other securities mentioned in section 99 of the act of 1864, on their own account and for themselves, and not for others or on commission, were properly chargeable with the tax prescribed in that section, prayed that it might be adjudged that they were not, and that the defendants might be enjoined from assessing or collecting the tax.

William F. Allen, for plaintiffs.

Samuel G. Courtney, Dist. Atty., for defendants.

NELSON, Circuit Justice. The act of June 30, 1864, provides for the production by the tax-payer of a list of property chargeable with a tax, and confers power upon the assessor to alter and amend the same; and sec-

tion 20 declares that the said assessors, &c., shall, immediately after the expiration of the time for hearing appeals, &c., make out lists containing the sums payable according to law upon every object of duty or taxation for each collection district, which lists shall contain the name of each person residing within the said district, &c., and that the assessor shall furnish to the collectors of the several collection districts, within ten days, &c., a certified copy of such lists, for their collection. The 28th section provides for the collection of the tax by the collector. The bill is filed to stay the assessment and collection, by those officers, of the tax claimed to be due, under the 99th section, for stocks, bonds, &c., sold by the plaintiffs for themselves, and on their own account.

If the question before me, on this application, turned solely upon my opinion as to the liability of the plaintiffs to this tax, I should feel bound to grant it at once; for, although I appreciate the difficulties and perplexities encountered in endeavoring to give construction to the various provisions of the act of 1864, and of the amendments of 1865, and in reconciling and harmonizing the same, yet, after the best consideration I have been able to give to the subject, I have come to the conclusion that the plaintiffs are not liable to the tax. But other considerations must be taken into view on this motion.

This is a bill of peace, to quiet the rights of parties, and to put an end to further litigation. The bill is founded on the idea that all persons in business as brokers, or who are bankers doing business as brokers, charged with the tax in question, have such a unity or joinder of interest in contesting it, that all may join in the bill for that purpose; and that as the parties are so numerous as to make it inconvenient to join all of them, a determinate number may appear in the name of themselves and for the rest. I have not been able to concur in this view. The interest that will allow parties to join in a bill of complaint, or that will enable the court to dispense with the presence of all the parties, when numerous, except a determinate number, is not only an interest in the question, but one in common in the subject matter of the suit; such as the case of disputes between the lord of a manor and his tenants; or between the tenants of one manor and those of another; or where several tenants of a manor claim the profits of a fair; or in a suit to settle a general fine to be paid by all the copyhold tenants of a manor, in order to prevent a multiplicity of suits. In all these and the like instances given in the books, there is a community of interest growing out of the nature and condition of the right in dispute; for, although there may not be any privity between the numerous parties, there is a common title out of which the question arises, and which lies at the foundation of the proceedings. There are analogous cases, also, where such a bill may be filed—such as,

where a person has an exclusive right of property or franchise which is controverted by numerous persons, as in the case of the corporation of York claiming an exclusive right of fishing in the river Ouse for nine miles, and which right was contested by different lords of manors, and persons resident on the banks of the river, as the litigation would have been endless, if the corporation had to bring actions at law. The same principle is found in the case of London v. Perkins, 3 Brown, Parl. Cas. 602, to establish a duty or tax against certain dealers in the city; and also in a suit on behalf of a charity for a rent-charge against the ter-tenants of the land.

In the case before me, the only matter in common among the plaintiffs, or between them and the defendants, is an interest in the question involved, which alone cannot lay a foundation for the joinder of parties. There is scarcely a suit at law, or in equity, which settles a principle or applies a principle to a given state of facts, or in which a general statute is interpreted, that does not involve a question in which other parties are interested, as for instance, the doctrine of trusts, and the statutes of descents, of frauds, of wills, and the like; yet no lawyer would contend that such an interest would justify a joinder of parties as plaintiffs, in a case arising under the law of trusts, or under any of the statutes mentioned. The same may be said of questions arising under the revenue laws, such as the tariff and the excise laws, which are the subject of litigation in the courts almost daily. Large classes of persons, other than the parties to the suit, are interested in the questions involved and determined. To allow them to be made parties to the suit would confound the established order of judicial proceedings, and lead to endless perplexity and confusion.

I am satisfied, therefore, that this bill cannot be sustained, on account of the joinder of improper parties as plaintiffs. But, as this error may be corrected, and as there are other cases before me in which it does not exist, I shall proceed to express my views upon them. They are cases in which the bill is filed by the party or firm against whom the tax is threatened.

I do not doubt the jurisdiction or power of the courts to interfere, and prevent the threatened imposition of the tax, if it is illegal. The second section of the act of March 2, 1833 (4 Stat. 632), known as the "Force Act," confers jurisdiction in express terms, and has been applied to the act of 1864, by its fiftieth section. And jurisdiction had previously, and has since, been upheld and exercised upon general principles of equity jurisprudence. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738; State Bank v. Knoop, 16 How. [57 U. S.] 369; Dodge v. Woolsey, 18 How. [59 U. S.] 331; Jefferson Branch Bank v. Skelly, 1 Black [66 U. S.] 436.

The granting of the writ of injunction, generally speaking, rests in the exercise of the sound discretion of the court. Where the remedy at law is adequate, it is always refused. It will be granted to prevent a multiplicity of suits and vexatious litigation, where the right has been established at law; and, where the right is plain, and the remedy at law is not adequate, it will oftentimes be granted without even a trial at law.

Although it was denied, on the argument, by the learned counsel, that the tax-payer, under the internal revenue laws, had a remedy at law, I am satisfied, on examination, that this is a mistake. The position may be true, as respects the collector, but I regard the liability of the assessor as settled, in a case of illegal assessment, by which I mean an assessment on property or business not liable to the tax. This is a naked trespass, where the property or business is disturbed by pretence of the authority. Even a court of special and limited jurisdiction is liable, in cases where its powers are carried beyond its jurisdiction. I agree, however, that the remedy at law in this case is not adequate, and that, for this reason, in ordinary cases, the party would be entitled to relief in equity. The main reason why this remedy at law is not adequate is the multiplicity of suits. The want of responsibility of the officers, I do not regard as material or controlling, for the reasons stated hereafter.

I have said that, in ordinary cases, a writ of injunction will be granted, to prevent a multiplicity of suits at law. The embarrassment in the present case is from the great number of persons affected by the tax. The remedy in equity would involve a litigation almost, if not quite, as onerous and vexatious as suits at law. Each tax-payer would be obliged to file a bill, in order to obtain relief. As to the litigation and multiplicity of suits, therefore, the difference in the proceedings in the one tribunal or in the other will scarcely justify the interposition of a court of equity in favor of the party complaining, especially where the inconvenience to the government in the collection of its public revenue is much more serious in the latter tribunal. I agree that, if the joinder of parties in this case could be maintained, this difficulty of a multiplicity of suits in equity would be very much diminished; but, for the reasons already stated, I am entirely satisfied that it is without precedent or principle.

It has been strongly urged, that the amounts of money involved in this controversy are very large, far beyond the ability or means of these officers to respond in actions at law. But, whether these officers are of sufficient responsibility or not, it must be remembered that the litigation is substantially between the tax-payer and the government [where the tax is collected under its express instructions as in the present case][2]; and it would be unjust to the latter to doubt, that, if the tax should be ultimately found to be illegal, the government will at once refund with interest, the money thus illegally collected. Indeed, the 44th section of the act has pledged the government to this effect, in advance.

Upon the whole, without pursuing the examination of the case further, my conclusion is, that, under the peculiar facts and circumstances attending this case, and for the reasons above stated, the injunction should be withheld, and the parties be left to their remedy at law. [Motion for injunction denied.][2]

[NOTE. The right of the government to collect this tax of the complainants was upheld by the supreme court in U. S. v. Cutting, 3 Wall. (70 U. S.) 441.]